The next case on the call of the docket this morning is agenda number 10, number 1, 2, 5, 9, 1, 8, Rosemarie Haag et al. v. Alfonso Montiel Zavala et al., with State Farm Mutual Automobile Insurance Company as the appellant. Mr. Reeses, you may proceed. Bear with me for a minute. I haven't done this before. Good morning. May it please the Court. Counsel. My name is Mike Reeses, and I'm here today for the intervener appellant, State Farm. These appeals address the terms of protective orders that govern the disclosure of plaintiff's personal health information, we'll call it PHI for short, during and at the end of personal injury litigation. Liability insurers like State Farm cannot evaluate and settle claims without this information. At the same time, insurers are heavily regulated under Illinois law and must keep claim documentation and records to meet carefully crafted regulatory obligations. For purposes of today's argument, we will first address state law and certain regulations. Second, HIPAA and federal regulations. And third, time permitting, the privacy clause in the state constitution. Let's start with state law. The insurance code prohibits redisclosure of PHI unless, quote, limited to that which is reasonably necessary, close quote, including to an insurance regulatory authority under section 1014 subparagraph E. Now, the appellate court in paragraph 52 of the opinion said that section 1014 did not mandate the retention or use of PHI per se. But there would be no point for the legislature to limit redisclosure if it did not intend insurers to keep PHI in the first place. The privacy protections presuppose that insurers retain PHI to carry out the purposes set forth in section 1014. This becomes even more clear in construing other sections of the code and regulations. Take section 919.3 of the regulations, for example. It requires insurers to make claim files available for inspection by the director of insurance. Section 919.30 subparagraph C uses the word, quote, shall, close quote, very important term, shall. Insurers shall retain detailed documentation in their claim files. Shall is generally understood to be mandatory, and there is no reason to believe that shall has a different meaning here. The appellate court found nothing in section 919.30 that requires insurers to keep PHI, paragraph 54 of the opinion. That ignores that the use of the word shall in reference to the detailed documentation that insurers must keep to permit the reconstruction of the pertinent activities for each claim file. And I think that's where the appellate court was fundamentally in error. HIPAA sets forth a procedure for the disclosure of PHI in litigation. It doesn't create a new privacy or privilege.  One of those procedures is, as you may be thinking, a HIPAA-qualified protective order with the return or destroyed provision set forth in the plaintiff's protective order. But it's not the only type of court order that is permitted. 164.512 subsection E1 small i refers to any court order that, authorizes the disclosure of PHI, but the order is limited to that disclosure. That order in subparagraph small i does not have the return or destroyed provisions. And our position simply is an order that is permitted by HIPAA cannot be preempted by HIPAA because it can't – it doesn't conflict with HIPAA. And I think that was the problem here. The appellate court looked at the order that we tendered, the order that's used in the most populous county in Illinois for the past four years, and said, in effect, that lowers the floor of HIPAA protection. But if HIPAA doesn't mandate the return or destroyed provisions, the order we tendered doesn't lower the floor of HIPAA protections. Scalia. Well, counsel, if it's any court order, then this is any court order. It just happens to be a more strict court order. Whether it's under subsection V or not, Roman numerals law 5 or not, it's still a court order that has to be complied with unless, perhaps, it violates Illinois law, as you're in the middle of that argument. And then it would be an abuse of discretion. Is that the crux of where we're at here? I'm sorry. I can't agree with that standard of review. Okay. I don't think it's an abuse of discretion. You have to construe the regulations and the law to know what they require. That is the noble review. If the law and the regulations require that insurance companies like State Farm retain this information for certain regulated uses and purposes, I don't believe that under Supreme Court Rule 201C that a protective order should be used to nullify those laws and regulations. And let's be clear. Under the plaintiff's protective order, those laws and regulations cannot be complied with because we can't keep the information so they can be reviewed for improper claim practices. We can't keep the information so that, if necessary, they're turned over for possible, you know, fraud investigation. If we have to return or destroy information within 60 days of the end of the litigation, we can't have that information available for other uses that are permitted under the actuarial studies or for reinsurance. And let's not forget the federal side of this, because under the Medicare Secondary Payor Act, we have to keep certain information. In the case where the plaintiff is a Medicare beneficiary and receives a conditional payment by Medicare, and then Medicare wants to know if the insurance company is the liable payer based on the diagnosis and the treatment and the injury and all that. So this is a very heavily regulated area. But under the plaintiff's protective order, all of those regulated uses have to be rendered null and void. There's no other way about it. Let's talk a little bit more about some of these regulations. I've been talking a little bit in the abstract. So if you look at Section 919.40, that defines documentation. How does it define it? It defines it to include a lot of things. It's not meant to be exhaustive. It refers to bills specifically. And let's — I don't think there's any dispute. The medical bills include PHI. Section 919.40 further defines settlement of claims. As providing that the company shall keep evidence of all activities directly or indirectly relating to the evaluation of liability and the potential amount due. Now, let me ask you, and I don't mean this as a rhetorical question, but how do you evaluate liability and the potential amount due if you don't have the bills, if you don't have the records that allow you to determine liability and the potential amount due? That is for the regulators to review. Regulators are not looking at just claim data under Section 919.30 of the Insurance Code. They're looking at the file, which includes the documentation. And our point is simply this. If they have to keep the documentation that contains PHI, they have to keep the PHI. The one is inseparable from the other in evaluating claims for improper claim practices and in the settlement of claims. Now, the Court held that insurers can comply with this section by simply placing a plaintiff's protective order in each claim file and returning or destroying all documentation of PHI within 60 days of the end of litigation. This would, in practice, require the destruction not only of records and bills, but also any claim notes, any summaries, any report from a defense counsel that refers to PHI, and thereby prevent the reconstruction of the pertinent events to each claim file. The Court's interpretation effectively thwarts the ability of regulators to look at the file and determine whether the claim was timely and properly paid. The plaintiff's protective orders prevent insurers from carrying out other important purposes under Illinois law. Section 1014, subparagraph C, allows insurers to share PHI with an insurance supporter organization. And section 155.23 allows insurers to share PHI with data processing organizations. The record contains affidavits from a former director of the Department of Insurance, Mr. Robert Wagner, and affidavits from two high-ranking insurance professionals from the National Insurance Crime Bureau and the insurance services offices that go into further detail as to how this information is shared for lawful permitted purposes. The National Insurance Crime Bureau is the state-designated depository for questionable claim information. That's pursuant to a memorandum of understanding entered into back in 2004 between the Department of Insurance and the NICB. The insurance services organization will compile databases to detect sophisticated patterns of insurance fraud, including interstate fraud. These efforts are important to reducing insurance premiums for Illinois consumers. But if insurers must return or destroy all medical records within 60 days of dismissal, they don't have that information to share after 60 days with law enforcement or with these support organizations to detect and prevent fraud. The lower court's decision will frustrate the strong Illinois public policy against fraud. And, again, I want to remind the court, a protective order should not be used to prohibit the regulated use of information outside the litigation. I previously referred to the affidavits from the former director of insurance. It was his opinion that the destruction of medical records in each claim file would prevent insurers from complying with their regulatory obligations. The lower court simply ignored those affidavits as well as the affidavits of other insurance industry professionals and interpreted state law and the regulations in a vacuum. This court should not do likewise. Let's turn to federal law, which is, I think, where Justice Overstreet was going about 10 minutes ago. Now, the appellate court found that the protective order tendered by State Farm would impermissibly lower the floor of HIPAA protection. That's in paragraph 63. That finding expands HIPAA beyond Congress's intent. HIPAA creates a procedure for disclosing medical records. That procedure authorizes different ways in which covered entities can disclose information without the return or destroyed provisions. Remember that State Farm, as a property counseling insurer, is not considered a covered entity under HIPAA. It does become subject to a protective order because the covered entity can only produce the information through a HIPAA-authorized procedure. We've never disputed that. But what we're saying is that because HIPAA allows for different types of procedure, in addition to a HIPAA- qualified protective order, that you can avoid any preemption by allowing for the entry of a protective order that does not have the return or destroyed provisions that HIPAA does not mandate, and that allows for the use of information for a regulated purpose specified in the insurance code. I refer the Court to Harold Jones v. Drury in Alaska decision that used that reasoning to reject HIPAA's preemption of State law claim. HIPAA does not preempt State law. HIPAA does not mandate the return or destroyed provisions. The subprovision of 164.512 that I referred to earlier permits disclosure by any court order as long as the disclosure is limited to the information expressly authorized by that order. When a court order accompanies a subpoena, it authorizes the covered entity to produce the records, quote, in response to an order of court, that's the language under section 164.512E, subprovision, small i. State and Federal courts across the country have entered such orders governing the release of medical information without the plaintiff's return or destroyed provisions. We have cited to those orders, their trial-level decisions, of course, in our briefs, and they're found in the supporting record. Protective orders are entered by authority of Rule 201C. They are intended to supervise and regulate discovery in the litigation. They are not intended to supersede laws and regulations that govern the insurer's retention of information for permitted non-litigation use. Regulated use, every bit as important as the non-litigation use of information at issue in Skolnick, from this Court, and Hall, from the Fifth District. Finally, the protective order tendered by State Farm does not unreasonably invade a plaintiff's privacy. I think it was – it may have been Justice Burke who, in the first instance, argument referred to privacy and the right of privacy. Well, the insurance information and privacy protections recognize the importance of privacy. And I'm not here today to tell you otherwise. But as this Court has stated many times, privacy is not an absolute right. Only unreasonable intrusions are prohibited under the state constitution. A plaintiff cannot claim a greater expectation of privacy after suit than before the lawsuit in which the litigant's physical or mental condition has been put at issue. This suit diminishes the expectation of privacy in the information as to the physical or mental condition at issue. Reasonableness is a function of relevance. Again, those are state law issues. They're not part of HIPAA. Because the use of the plaintiff's PHI in the litigation does not violate privacy rights, retaining PHI is not a separate intrusion while serving legitimate and important needs that the legislature and the Department of Insurance have determined insurers need to have in that information after litigation unrelated to litigation. The protective orders that State Farm tendered limit the use of PHI only for the non-litigation purposes necessary to comply with state and federal law. And I cannot emphasize this enough, insurers have every reason to comply with the insurance information and privacy protections required by Section 1001 of the Insurance Code and by Graham Leach Bliley, because they are regulated by the Department of Insurance and they are subject to a range of penalties for violation. And those penalties can include anything from cease and desist orders, escalating to monetary fines and sanctions, license suspension and license revocations. To conclude by way of summary, the plaintiff's protective orders nullify state law and regulations authorizing and requiring insurers to retain PHI for important non-litigation purposes, second, HIPAA does not preempt state law and the two can be harmonized by entering protective orders without the return or destroy provisions. For all the reasons set forth in our briefs, we ask you to reverse and remand for the entry of the protective orders that we tendered or with directions to enter a protective order that does not have the return or destroy provisions and that allow insurers to retain, use and disclose PHI in conformity with all federal and state law and regulations. If there are no further questions, thank you for your time and attention today. We know the issue is important to the plaintiff's bar and it's important to property and Caltree insurers. So again, thank you very much for hearing us out today. Thank you, Mr. Reeses. Mr. Robert Don Fink for the appellees. Thank you. Good morning, Your Honors. My name is Robert Fink and I rise today on behalf of my clients in the consolidated matters, Ms. Hage and Ms. Serlach. Ms. Hage and Ms. Serlach had the unfortunate circumstances of being involved in automobile collisions which resulted in personal injury with individuals who were insured by State Farm. And at issue in this case is whether State Farm and other insurance companies can collect, retain and use for their personal and business uses, personal health information of individuals. Retaining that information outside of the scope of litigation. In considering this issue, the trial court considered the qualified protective order submitted by the plaintiffs and the proposed order submitted by State Farm. The trial court correctly entered the plaintiff's qualified protective order which met the requirements of HIPAA over the proposed order of State Farm which did not. The trial court noted that the plaintiffs sought a qualified protective order which by definition is an order pursuant to HIPAA subsection E-1-2. And the trial court noted that State Farm's objections to the plaintiff's motion for the qualified protective order and all briefing addressed the issue of the qualified protective order. And thus whether or not a different method may have been available was not relevant or an issue before the court. Now State Farm's current claim as noted in its reply to this court states that this is an order of the court under E-1-1 and not a qualified protective order under E-1-2. But this is demonstrably untrue as State Farm in the objection at the trial level to the qualified protective order requested that, quote, this honorable court to deny plaintiff's motion for the entry of a proposed HIPAA order and enter an alternative order as tendered by State Farm and attached her to as Exhibit B. Well, Exhibit B, which is 155 of the record, is a HIPAA qualified protective order. This is directly contrary to State Farm's claim that it's submitting under E-1 and not E-2. State Farm submitted to the trial court what it purported to be the qualified protective order. However, it does not contain a use or a destruction provision. Two provisions which are required by definition to qualify as a qualified protective order pursuant to HIPAA. And therefore, the court correctly chose the plaintiff's qualified protective order and rejected State Farm's proposed order. State Farm's order forces a, quote, unquote, voluntary waiver of a constitutional right of privacy in order to proceed with exercising a constitutional right to a remedy. In fact, the very first paragraph of State Farm's proposed order is that, quote, this court explicitly finds that this court order is necessary to protect a party's right to privacy as guaranteed by Article I, Section 6 of the Illinois Constitution. However, State Farm's proposed order then goes on to protect that constitutional right to privacy by requiring that that very right, the right to a constitutional right of privacy, be waived as a conditioned precedent to proceeding with the case. And just as disturbing is that State Farm's order requires that the plaintiff to sign and stipulate that it is supposedly being waived freely and without reservation, including the entire contents of the order, which, of course, includes that waiver of the right of privacy. Failure to stipulate would result in dismissal of the case. The act of waiving a constitutional right under the threat of deprivation of another constitutional right, in other words, the threat of dismissal and removal of the constitutional right to the remedy, cannot be said to be made freely or voluntarily without reservation. The fact of the matter is that the waiver is necessary, and that the waiver of the constitutional right is necessary, because it is required to retain protected health information, PHI. Now, State Farm's position is based entirely upon the claim that it's required to retain its information because of the insurance code. However, State Farm, in its reply to this claim, states that PHI, it states retention is implicit in the statutory authorization for limited re-disclosure of PHI. There would be no reason for the General Assembly to limit re-disclosure under the code if insurers could not lawfully retain the information in the first place. We heard that argument here again today. However, that is an incomplete analysis. It's a wrong analysis. There is a lot of reason for the General Assembly to limit re-disclosure of PHI. State Farm comes into possession from protected health information, of protected health information from many sources. Some of those sources have no prohibition against re-disclosure of that information. Without the General Assembly restricting the re-disclosure of protected health information, State Farm could put it on Facebook. State, you know, there's a lot of protected health information available. So State Farm, who can get medical records, as defined by the General Assembly, they can, they receive State Farm, sorry, State Farm receives medical records pre-suit from claimants, trying to settle their claims. They get authorizations from their own insurers whenever they file, when their insurer files a claim for uninsured or underinsured benefits. None of those means that the General Assembly would have any reasons of attaining PHI are otherwise protected from re-disclosure if the general, if the legislature didn't prohibit it. So State Farm's position is, in this instance, is wrong. There is reason to limit the re-disclosure. Would the appellate court decision in this case hinder identification of improper claims procedure and or insurance fraud? Absolutely not. And one of the things to remember here, especially directly relative to fraud, is the terms, so fraud is pursuant to 5 slash 15523, which is fraud reporting. If an insurance company in Illinois has factual information that is pertinent to suspected insurance fraud, it is required by law to report that information to the NICB. But State Farm ignores and attempts to completely write out of the statute the word suspected. So State Farm wants to take all information that it gets, protected health information, regardless of its source, and turn it over to NICB under the guise of fraud prevention. It wants to use it for its own business purposes, as we heard today, for rate setting and other factors. The legislature has determined that the only time it is appropriate to disclose the PHI to NICB is if there is already suspected insurance fraud. And we know that this doesn't impact NICB, because when we look at, as Council for State Farm has indicated, the most populous county in the state, Cook County had from 2012 until 2017-18 a general order requiring the use of a protective order, which included a use and destruction provision. Presumably, State Farm and the other insurance companies were complying with that order, that there would have been thousands and likely tens of thousands of cases. All of the personal injury cases, at least in Cook County, and likely in, you know, throughout the rest of the state, where there were use and destruction provisions in place. So NICB was not being provided these records unless, of course, there was insurance fraud. If a general assembly wanted State Farm and other insurance companies to retain personal protected health information, it would have expressly done so. It's familiar with the terms within Section 1003 of the code, insurance information and privacy protection section of the code. The legislature has demonstrated familiarity with terms such as medical record information, which includes individuals' physical and mental health conditions, their medical history, and their medical information. Privileged information, which is exactly the kind of information we're talking about here. The general assembly, in writing the code, defined and in defining those terms, yet, the general assembly, in writing the code, they never included a single one of those terms anywhere in any of the codes in identifying what records State Farm needs to maintain. They didn't include the term medical record, medical record information, protected health information, personal health information, privileged health information. All key terms that the legislature has used and defined, and is well familiar with and used in other areas of the insurance code, as well as other statutes, within NICB and other states that have been passed, all those terms, and not one of them appears anywhere in any of the sections that State Farm relies on in claiming this need to retain personal health information in order to comply with the code. Are medical bills protected? Medical bills are, there's no, medical bills does not appear anywhere. The word bills does. But to read that in context, if you take the single word bills, then yes, you might say, oh, well, medical bills are included in that. But in reading the entire context of the statute, it is clear that they're not referring to medical bills. They're not referring to personal health information. This is what the Department of Insurance is interested in, is the company records and the company conduct. The Department of Insurance, in fact, has confirmed the exact opposite of the company conduct. State Farm's interpretation of the rules. State Farm grossly misstates the FOIA responses in their reply to this court that insurers, I'm sorry, State Farm claims that the FOIA responses recognize that claim files contain PHI, and therefore confirm the insurers retain and redisclose information, including PHI, as part of the audit process for the company. State Farm ignores both the April 11, 2018 response where the department states, quote, the department does not require or need PHI. It also ignores the May 4, 2018 response where the department indicates that it does not require, quote, non-health insurance companies to retain PHI, for what the purpose is to retain PHI, and for how long. The Department of Insurance, in so stating it has no such requirement for the retention of PHI, even specifically cites the section 919.30 of the code. That's the same section that State Farm is attempting to rely on. Now, of course, this court is not bound by the ---- Counsel, how would you reconstruct a claim file without the medical bills in a case such as this? Sure. The same way that they did for the ---- from 2012 until 2018. That's not ---- the department is, again, looking to the company records. PHI is not required to do that. In addition, the department has subpoena power. If the department needs protected health information for some particular purpose, the department can access that. It doesn't need to restrict this to the department in any way, shape, or form. It just means that State Farm isn't maintaining those records. And the important thing here is State Farm is not just maintaining those records. They're not just putting them into a file somewhere and saying we're just keeping these in case, you know, we get audited. They're using these records, they're turning them over to third parties, and they're using them for their own business purposes. That doesn't ---- don't the medical bills, aren't they part of the PHI? Medical bills are PHI, correct. But there is ---- medical bills does not appear anywhere in the code. No term which would include PHI is included in any of the statutes cited by State Farm as justification for the retention of the PHI. State Farm claims that a QPO pursuant to E-1-2 is not proper because it creates a conflict with state law and that HIPAA therefore should not utilize a QPO. It's inaccurate and it results in an absurd result. First, there is no conflict. State Farm cannot and has not cited to any authority for its interpretation of that statute, rule, or any rule or statute. State Farm relies on, for example, the Smart Case, which specifically in interpreting Illinois finds that it does not, that Illinois insurance code does not require the retention. And it also ends in the absurd result as to remove a qualified protective order from HIPAA in every case in which there is insurance, which could not have possibly been the intent of the drafters of HIPAA when addressing the rules for disclosing PHI in judicial proceedings. The drafters of HIPAA certainly understood that personal injury cases can and would make up a majority of such judicial proceedings and that insurance is going to be involved. They would, State Farm would have this court write out E-1-2 right out of HIPAA, never to be used. And even if State Farm... Alito, procedurally, let me just ask you procedurally. I take it there were subpoenas issued, there was discovery ongoing. And then your clients came in and asked for a protective order, correct? Was it before the covered entity submitted any PHI? It is. And in fact, a covered entity is prohibited from releasing any PHI without satisfactory assurance. One of the means of obtaining that satisfactory assurance is by the QPO. I understand that. That's if it's just going to comply with a covered entity. But if you're in court, nothing's been complied with yet by the covered entity, and then you come in and ask for this order, then isn't the covered entity proceeding by way of subparagraph 1 giving that information out? It would not. It would be... E-1 and E-2 are both orders. E-1 is a general order. E-2 is a specific qualified protective order, which includes the specific requirement of use and provision, use and destruction provisions. E-1, in order to qualify as an order under E-1 and therefore act as a satisfactory assurance to the qualified, I'm sorry, to the covered entity, E-1 can only be, it's only a proper order under E-1 if it authorizes the, if it, if the covered entity is only authorized to produce specifically and expressly authorized PHI pursuant to that order. State Farm's order is not an E-1 order, and it cannot be an E-1 order, because it does not expressly authorize anything. There is no limiting instruction anywhere within State Farm's proposed order. It does not restrict time, scope, body parts, relevance, anything. It is, if anything, it is an authorization for any and all, which, of course, it would also fail on. To the extent... Kennedy. When are E-1 orders entered? A good example of when an E-1 order would be entered is in exactly all of the cases cited to State Farm in which the defendant is a party. It does not need a qualified protective order, because the defendant is a party. It can, the defendant is a party, enter an order saying, defendant, turn over the records. And that might be necessary, for example, in dealing with mental health, where there is a separate order might be necessary. So if it was, if State Farm's order is an E-1-1 order, again, authorizing any and all, it would have to fail not only because it does not expressly authorize anything, any express protective health information, but it also has to fail because it violates the Illinois Constitutional right to privacy. As this Court found in Kunkel v. Walton, unrestricted scope is unreasonable and unconstitutional. And there is no question. This proposed order is unrestricted in scope. And therefore, it is unreasonable and unconstitutional. It also violates Rule 201. Mr. Fink, you have to. Oh, yes. Thank you. If I, if I very briefly may, Your Honor, this Court should, should affirm the rulings of the lower court, and further, the Court should exercise its supervisor, should this Court exercise its supervisory authority. It should be to require and ensure compliance with the Illinois Constitutional right to privacy, and that all trial court orders authorizing the release of protective health information contain a use and destruction provision, which will protect the privacy rights of not only the plaintiffs, but innocent, uninvolved third parties. Thank you. Thank you, Mr. Fink. Mr. Reese, your medal, please. Okay. First of all, plaintiffs say that we were trying to tender a non-qualifying HIPAA-qualified protective order. We did not. We were not trying to tender a HIPAA-qualified protective order. We were tendering a HIPAA-protective order, not one with the word protected, but one with the word HIPAA-qualified in it. I know it is not good form to read from one's brief during an oral argument, but if the Court will bear with me, I want to just make one citation to the record below. We said, and this is on page 14 of our reply brief, that the order at issue is an order as referenced under HIPAA. This is what we said. It is not a qualified, protective order and does not need to include the terms and conditions that a qualified, protective order must contain. That's at pages 599 and 616 of the supplemental record. Now, earlier we said, this is at page 135 of the record, that HIPAA authorizes a covered entity to do a review of the HIPAA-qualified protective order. We said, and this is on page 14 of our reply brief, that HIPAA authorizes a covered entity to disclose specified private health information in judicial proceedings, quote, in response to an order of a court, close quote, and we cited sub-paragraph small i, not the HIPAA-qualified protective order portion of the regulation, but the order of court portion of the regulation. Now, plaintiff also says that our order did not comply even with HIPAA-qualified protective order. That portion of the regulation. A medical protective order, like the one that we're talking about, is entered at the start of the case before discovery takes place. That's in response to your question, Mr. Justice Burke. When the order accompanies a subpoena under section 164.1512, 512E, small i, if the plaintiff objects, the dispute is resolved as it has always been resolved, either through a 201K conference or through motion practice. When counsel talks about time and relevancy limitations, those are State law issues. They're not HIPAA issues at all. I don't know why he's talking about them today because they have nothing to do with HIPAA. They have nothing to do with what we're talking about. Not even a HIPAA-qualified protective order regulates scope and relevancy. We included in the record other protective orders from other jurisdictions that comply with 164.1512. They don't have any terms regarding relevancy and time limitation. The protective order we tendered does not authorize any and all medical records. The words any and all are not part of our order. I would refer the Court to paragraph 6 of the order that requires that all discovery take place only through formal discovery procedures, such as interrogatories, production requests, depositions, and orders of the court. So those procedures are allowed to resolve so the courts can resolve if there's any dispute over the scope and relevancy. Paragraph 6 has built into it the mechanism by which relevancy will be determined as it has always been determined. The order changes nothing in that regard. And for that reason, this case could not be more unlike Kunkel. We heard about Kunkel again today. But there, the authorization at issue under Section 2-1003 didn't allow for any judicial oversight. Here, to the contrary, judicial oversight is built into the terms of the order. Plaintiff talked about the FOIA responses. And let's be very clear about something. The FOIA responses in the record are not a legal interpretation of the regulations. They didn't come from an interpretation by the Department of Insurance. And the responses are not a denial that liability insurers must keep, quote, detailed documentation, close quote, from claim files. By the way, what he didn't tell you was that that documentation can't be disclosed. It's protected by the insurance code. And it's protected by the Freedom of Information Act. If insurers have to keep the documentation, they have to keep the PHI that's in the documentation. It's not just a custom. It's not just a practice. Retaining the documentation is required by the use of the word shall in Section 919.30. I was surprised to hear today that counsel said that, yes, medical bills contain PHI, but when the definition of documentation includes bills, well, heck, that shouldn't include medical bills. What kind of bills are at issue if it's not medical bills? He didn't tell you that. The improper claim practices just don't relate to, you know, bodily injury, medical payments coverage. It can refer to property damage. Okay. So the regulation is defined broadly to include all bills, not just nonmedical bills. And since he just told you that bills include medical, that medical bills include PHI, it's inseparable. If you, if you, if you, if you, if you, if you, if you, if you, if you, if you look at the statute on fraud, it's 155.23. He referred you to Part 1 that talks, I'm sorry, to Part 1 that talks about suspected, but if you look at the other part of the statute, I'm sorry, subparagraph 2 is the one that talks about sharing information with an insurance support organization or a data support organization. Simple question he didn't really answer. If we can't share the information, how can you root out, how can you detect and root out fraud? It's in the pattern. It's not just the individual insured. It's not just the individual claimant. It's other actors. You have to know what the treatment is. You have to know what the injury is. You have to recognize that it's, that it is a regulated use of that information. He never really told you how fraud can be detected if you don't have the information in the first place. If you don't have the evidence, you have nothing. And under this order tendered by the plaintiff, you have nothing. I want to talk just a moment again about privacy. Because although privacy has come up at a couple of points today, that is one of the concerns of the insurance code. And it's one of the concerns the plaintiff has, legitimately so. And it's also one of the concerns of insurance companies that are required to keep this information protected from discrimination. And it's one of the concerns of the insurance company. And that is there is no redisclosure except in very narrow instances. Privacy is not an absolute. The critical question here, the critical question here, as it is in every case, is whether the use of the information is reasonably related to legitimate and important purposes under state law and regulation. The statute talks about the redisclosure to an insurance regulatory authority. That's the information in 1014, subparagraph E. Also for fraud detection and also for other permitted uses. One thing counsel never really addressed, Skolnick and Hall versus Sprint, they talk about discovery, about protective orders. And what they have said is that a protective order should not be used to protect the person who has been prosecuted. It should be used to prohibit a regulated or required use of the information outside the litigation. Now in Skolnick, yes. I'm sorry, sometimes I get so wrapped up in my argument, I lose all track of time and time flies. We again thank the court today for all of your attention. For all the reasons set forth in our briefs, we ask you to reverse and either enter the order that we tendered or with instructions for the entry of another order that doesn't have those return or destroyed provisions and that allows us to comply with all federal and state law. Thank you again for your time and attention. Thank you for your arguments, Mr. Reese and Mr. Fink this morning.